# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS,
## DEL RIO DIVISION

ARNULFO REYES, Individually;
FEDERICO TORRES, JR., Individually and
as Wrongful Death Beneficiary of ROGELIO
TORRES, deceased minor; AZENETH
RODRIGUEZ, Individually and as Next
Friend of JAYDIEN ALEXANDER
CANIZSALES, a minor, SERGIO GARCIA,
Individually and as Wrongful Death
Beneficiary of UZIYAH SERGIO GARCIA,
deceased minor; ALFRED GARZA, III,
Individually and as Wrongful Death
Beneficiary of AMERIE JO GARZA, deceased
minor; BRIANA RUIZ, Individually and as
Next Friend of DANIEL GARZA, III, a minor;
MARIO JIMENEZ, JR., Individually and as
Next Friend of MARIO JIMENEZ, III, a
minor; ROSE MARY MORENO, Individually
and as Next Friend of NIKOLAS MORENO,
a minor; PRISCILLA RUBIO and JULIO
RUBIO, Individually and as Next Friend of
MADISON RUBIO, a minor; MONICA
ARRIOLA, Individually and as Next Friend
of JEREMY TREVINO, JR., a minor;
CHRISTOPHER SALINAS, Individually and
as Next Friend of SAMUEL N. SALINAS, a
minor,
     *Plaintiffs,*

v.

DANIEL DEFENSE, LLC; DANIEL
DEFENSE HOLDINGS, LLC; M.C. DANIEL
GROUP, INC.; FIREQUEST
INTERNATIONAL, INC.; FLASH CO.,
INC.; EOTECH, LLC; PROJECT ECHO
HOLDINGS, LLC D/B/A AMERICAN
HOLOPTICS; KOUCAR MANAGEMENT,
LLC; and OASIS OUTBACK, LLC,
     *Defendants.*

---

CASE NO. 2-24-cv-00073-AM

COMPLAINT AGAINST OASIS
FOR DAMAGES

1.    Negligence / Negligent Entrustment,
    Plf. Orig. Pet. at ¶¶22.1-22.11

2.    Punitive/Exemplary Damages, Plf.
    Orig. Pet. at ¶¶23.1-23.4

Jury Trial Demanded pursuant to Fed. R.
Civ. P. 38(b)

Removed from Case No. 2024-05-
35550-CV in the 38th Judicial District
Court of Uvalde County, Texas

1

<u>DEFENDANT OASIS OUTBACK, LLC'S MOTION TO DISMISS</u>
<u>UNDER FED. R. CIV. P. 12(B)(6)</u>

This lawsuit arises from the criminal shooting at Robb Elementary in May 2022 perpetrated by an 18-year-old (the "Shooter" or "Purchaser").  Oasis Outback, LLC ("Oasis") is a local sporting goods store that also serves as a firearms dealer to complete online purchases made directly from gun manufacturers.  Plaintiffs are victims of the Shooter's crimes.

Plaintiffs have suffered unspeakable trauma.  They are entitled to and deserve empathy for the awful events of that tragic day.  But they cannot maintain this lawsuit against Oasis because it is immune from suit under the Protection of Lawful Commerce in Arms Act (15 U.S.C. §§ 7901–7903 ("PLCAA")).  And, even without the federal immunity granted under the PLCAA, Plaintiffs fail to state a claim against Oasis.  Texas does not recognize claims for the negligent sale or transfer of a chattel.  Whether the Court applies the PLCAA or Texas law, Oasis is entitled to dismissal of Plaintiffs' claims against it for (1) negligence/negligent entrustment, Plf. Org. Pet. at ¶¶ 22.1–22.11, and (2) gross negligence, Plf. Orig. Pet. at ¶¶ 23.1–23.4.

## FACTUAL BACKGROUND

## I.  The PLCAA's framework.

The PLCAA was enacted by Congress in 2005 with bipartisan support.  It generally prohibits lawsuits against firearms and ammunition manufacturers, distributors, sellers, dealers, and importers for damages arising from the criminal or unlawful misuse of firearms and ammunition by third parties.   15 U.S.C.

2

§ 7903(5)(A); 15 U.S.C. § 7901(b)(1).  Covered actions "may not be brought in any Federal or State court."  15 U.S.C. § 7902(a).

Congress enacted the PLCAA in response to lawsuits seeking to hold firearm and ammunition manufacturers and sellers legally responsible for the criminal misuse of their products.  15 U.S.C. §§ 7901(a)(1)–(8).  In enacting the PLCAA, Congress specifically found that:

> The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

15 U.S.C. § 7901(a)(6).

One purpose of the PLCAA is to "prohibit causes of action" against manufacturers and sellers of firearms and ammunition, 15 U.S.C. § 7901(b)(1), thereby "prevent[ing] the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce."  15 U.S.C. § 7901(b)(4).  Another important purpose is to safeguard the Second Amendment and "preserve a citizen's access to a supply of firearms and ammunition."  15 U.S.C. §§ 7901(a)(1)–(2) and (b)(2)–(3); *Travieso v. Glock Inc.*, No. CV-20-00523-PHX-SMB, 2021 WL 913746, at *3–4 (D. Ariz. Mar. 10, 2021), appeal dismissed, 2021 WL 4295762 (9th Cir. 2021).

The PLCAA generally prohibits claims against firearms and ammunition manufacturers, distributors, dealers, and importers for damages and injunctive relief arising from the criminal or unlawful misuse of firearms and ammunition, unless the

suit falls within one of six enumerated exceptions.  15 U.S.C. §§ 7901–7903.  The Texas Supreme Court addressed the PLCAA in *In re Academy, Ltd.*, 625 S.W.3d 19, 34 (Tex. 2021), a case dismissing claims stemming from the criminal shooting in Sutherland Springs.  There, like here, the firearms dealer ran a background check that came back "clean," revealing no disqualification to the sale.  *Id.* at 23.  There, like here, the plaintiffs claimed the dealer was nevertheless liable for the sale under a negligent entrustment/transfer theory.  The Texas Supreme Court applied the PLCAA to dismiss the case.  *Id.* at 24.  The Texas Supreme Court explained, the PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims." *Academy*, 625 S.W.3d at 34 (quoting *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009)).  "[T]he PLCAA prohibits, with six exceptions, a category of civil actions against manufacturers and sellers of firearms and ammunition products." *Id.*

Importantly, the PLCAA does not create causes of action or remedies.  15 U.S.C. § 7903(5)(C).  For a cause of action to be exempt from PLCAA immunity, the action must exist under applicable state or federal law.  *Academy*, 625 S.W.3d at 32.

## II. Plaintiffs' allegations.

The following allegations are taken as true for the purposes of dismissal:

| Page & Para. | Factual Allegations |
|---|---|
| ¶7.177 | The Shooter's DDM4v7 would be shipped to Oasis Outback, a Uvalde gun store, where the Shooter would be able to pick it up. |
| ¶¶ 7.181–7.183 | On May 16, 2022 – the day he turned eighteen – the Shooter went to Oasis Outback.  On May 17, 2022, the Shooter went again to Oasis Outback.  There, he purchased a Smith & Wesson AR-15 for $1,081.42.  On May 18, 2022, the Shooter |

| | |
|---|---|
| | returned to Oasis Outback and purchased 375 rounds of M193, a 5.56mm 55-grain round with a full metal jacket. |
| ¶¶ 7.198-7.200 | On Friday, May 20, 2022 at 10:59 a.m., the Shooter received an email from UPS saying that his DDM4v7 had arrived at Oasis Outback.   Seven minutes later, the Shooter called Oasis Outback.   The Shooter went to Oasis Outback to pick up his DDM4v7. |
| ¶ 7.201 | While he was there, he had Oasis Outback install the EOTech combat sight on his DDM4v7.  To work, the sight needs to be mounted properly and at the correct position on the firearm.  Upon information and belief, the Shooter, who had never before fired a firearm in real life or properly mounted a sight on one, did not feel able to mount the EOTech sight on his own. |
| ¶ 22.2 | Defendant Oasis Outback had a duty to exercise reasonable care in selling firearms, transferring firearms, installing firearms accessories, and selling ammunition, and to refrain from any activity creating reasonably foreseeable risks of injury to others. |
| ¶ 22.3 | Defendant Oasis Outback breached its duty to exercise reasonable care by:<br>a. installing the EOTech holographic combat sight on the DDM4v7;<br>b. "zeroing" or otherwise adjusting the EOTech holographic combat sight for the Shooter;<br>c. supplying the Daniel Defense DDM4v7 to the Shooter;<br>d. supplying a Smith & Wesson AR-15 to the Shooter; and/or<br>e. supplying ammunition to the Shooter. |
| ¶¶ 22.4–22.6 | Despite his youth and having turned eighteen just days before, the Shooter spent thousands of dollars on multiple guns and large quantities of ammunition at and through Oasis Outback over a four-day period, and requested that a state-of the-art, military combat sight be installed on the DDM4v7, all of which was so unusual that it caused Oasis Outback's owner to question the Shooter as to where he got the money.  Other patrons at the store noticed the Shooter acting unusual, nervous, and alarming during these repeat visits.  He dressed in all black and, as one customer described him, he looked |

| | |
|---|---|
| | "odd" and "like one of those school shooters." Other customers described the Shooter as "very nervous looking" and giving off "bad vibes." Oasis Outback had the right to refuse service to anyone. |
| ¶ 22.7 | Oasis Outback knew and reasonably should have known that the Shooter was likely to use each of the items described above in a manner involving unreasonable risk of physical injury to himself and others. |

Based on these allegations, Plaintiffs sue Oasis for (1) negligence based on negligent entrustment theories and (2) gross negligence. Plaintiffs essentially argue that their case meets the PLCAA's exception for "negligent entrustment" and that the sight made the basis of their allegations is not a qualifying product under the PLCAA. *See* Plf. Orig. Pet. at ¶¶ 22.9-22.11.

## RULE 12(B)(6) LEGAL STANDARDS

A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint should be dismissed when, on its face, it is devoid of facts necessary for the plaintiff to prevail under the cause of action asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

PLCAA immunity is properly raised through a motion to dismiss under Rule 12(b)(6). *See, e.g., Phillips v. LuckyGunner, LLC*, 84 F. Supp. 3d 1216, 1220 (D. Colo. 2015) (dismissing case stemming from a criminal shooting at a movie theater under PLCAA); *Bannerman v. Mountain State Pawn, Inc.*, No. 3:10-CV-46, 2010 WL

9103469, at *3, 8–9 (N.D. W. Va. Nov. 2010) (dismissing based on PLCAA); *Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 551 (D. Ariz. 2021) (same); *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1190 (D. Nev. 2018) (same).

ARGUMENT

## I.  The PLCAA applies to Plaintiffs' claims.

The PLCAA "prevent[s] the use of . . . lawsuits to impose unreasonable burdens" on members of the firearms industry.  15 U.S.C. § 7901(b)(4); *see also City of New York v. Beretta*, 524 F.3d 384, 394–95 (2d Cir. 2008) ("Congress explicitly found that the third-party suits that the Act bars are a direct threat to the firearms industry," and a "rationally perceived substantial effect on the industry [because] of the litigation that the Act seeks to curtail.").

Plaintiffs pleaded a "qualified civil liability action" for which Oasis is immune under the PLCAA.  Congress preempted Plaintiffs' lawsuit when it enacted the PLCAA to ensure access to firearms and ammunition would not be regulated by the vagaries of tort litigation and liability stemming from their criminal misuse.  Because Plaintiffs plead a qualified civil liability action and none of the PLCAA's exceptions apply, Plaintiffs' claims must be dismissed.

### A.  Plaintiffs pleaded a "qualified civil liability action."

Oasis is entitled to immunity because the allegations in Plaintiffs' pleadings, taken as true for purposes of dismissal, establish this is a "qualified civil liability action" under the PLCAA.  15 USC § 7903(5)(A).

A "qualified civil liability action is (1) a civil action (2) brought by any person (3) against a seller of a qualified product (4) for damages or other relief (5) resulting

7

from the criminal or unlawful misuse of the product by a third party." *Academy*, 625 S.W.3d at 26.

Plaintiffs' suit fits the PLCAA's definition of a qualified civil liability action. The damages Plaintiffs seek resulted, at least in part, from the "criminal or unlawful misuse" of a firearm by a third party: i.e., the Shooter.  Under PLCAA, the "term 'unlawful misuse' means conduct that violates a statute, ordinance, or regulation as it relates to the use of a [firearm or ammunition]." 15 U.S.C. § 7903(9).  The Shooter's crimes satisfy the requirement.  *See Academy*, 625 S.W.3d at 26 (concluding mass shooter's crimes satisfied requirement).

And, Oasis is a "seller" of a qualified product.  *See* 15 U.S.C. § 7903(6)(C) (defining "seller"); 15 U.S.C. § 7903(1) (defining "engaged in business"); *see also* 18 U.S.C. § 921(a)(11) and 18 USC § 921(a)(21) .  Under the PLCAA, a protected "seller" includes "a dealer . . . who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of Title 18" (i.e., the Gun Control Act of 1968 ("GCA")), and "a person engaged in the business of selling ammunition . . . at the wholesale or retail level." 15 U.S.C. § 7903(6)(b) & (c).  The GCA, in turn, defines the term "dealer" to mean "any person engaged in the business of selling firearms at wholesale or retail [or] any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms."  18 U.S.C. § 921(a)(11).

The PLCAA likewise incorporates the GCA's definition of the term "engaged in the business."  15 U.S.C. § 7903(1).  The GCA defines "engaged in business," "as

4869-1619-9113.4

applied to a dealer in firearms," to mean "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms . . . ."  18 U.S.C. § 921(a)(21)(C).  Additionally, as applied to a dealer, "engaged in the business" means, in relevant part, "a person who devotes time, attention, and labor to engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit . . . ."  18 U.S.C. § 921(a)(21)(D).

Plaintiffs allege Oasis sold guns and ammunition to the Shooter and helped facilitate the transfer of the Daniel Defense rifle he purchased online.  Pls.' Orig. Compl. at ¶ 22.2–22.3 (alleging "Oasis Outback had a duty to exercise reasonable care in supplying firearms, selling firearms, transferring firearms, installing firearms accessories, and selling or supplying ammunition"); *id.* at ¶ 22.7 (alleging Oasis liable for supplying guns, sight, and ammunition to shooter).  They also plead Oasis is a gun store engaged in the relevant business and facts supporting its status as a "dealer" "engaged in business" as a "dealer in firearms."  15 U.S.C. § 7903(6)(b) & (c); 18 U.S.C. § 921(a)(21)(C) & (D).  *Id.* at ¶¶ 3.16 and 7.177.  Accordingly, Oasis is a "seller" for purposes of the PLCAA.

As used in the PLCAA, "the term 'qualified product' means a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of title 18, United States Code), including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title), or a component part of a firearm or ammunition, that has been shipped or transported in interstate or

foreign commerce." 18 U.S.C. § 7903(4). The products at issue in this case—a sight, two rifles and ammunition—constitute "qualified products" for purposes of this definition. Plaintiffs plainly allege that Oasis is a "seller" of both firearms and ammunition. That is where the analysis begins and ends. Those allegations, alone, demonstrate that Oasis is a protected "seller of a qualified product." Therefore, this is a "qualified civil liability action."

Plaintiffs agree the PLCAA applies to Oasis' transfer of guns and ammunition, requiring Plaintiffs to meet an exception to the PLCAA, *see, e.g.*, Plf. Orig. Pet. at ¶ 22.10. Plaintiffs suggest however, that the EOTech sight is not a "qualified product" within the meaning of 18 U.S.C. § 7903(4) because it is not a "component part of a firearm" and that Plaintiffs' claims predicated on the sight fall outside the PLCAA's immunity framework. *Id.* at ¶ 22.11.

The PLCAA itself does not define "component part of a firearm." *See id.* Accordingly, the Court employs traditional tools of statutory construction, which includes examining (1) the plain text of the statute; (2) the structure and context; (3) the legislative and drafting history; and (4) the purpose. *See, e.g., Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 589 (2008). Words of a statute are to be "read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (explaining that when interpreting a statute, a court must consider "the broader context of the statute as a whole"). When there is no statutory definition, terms must be given their ordinary meaning. *Asgrow Seed Co. v.*

*Winterboer*, 513 U.S. 179, 187 (1995).  A court can look to dictionary definitions in construing statutes.  *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 564 (2012).  When used as an adjective, the word "component" is defined in the Merriam-Webster dictionary as "serving or helping to constitute."  Component, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/component (last accessed June 14, 2024).  Its synonym is "constituent."  "Part" is defined as "one of the often indefinite or unequal subdivisions into which something is or is regarded as divided and which together constitute the whole."  Part. Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/part (last accessed June 14, 2024).  Cambridge Dictionary defines "component" as a "part that combines with other parts to form something bigger."[1]  A "part" is defined as "a separate piece of something, or a piece that combines with other pieces to form the whole of something."[2]  A sight satisfies these definitions, particularly for the outdoorsman accustomed to relying on sights for hunting large game at a distance.

The purpose and content of the PLCAA also inform the conclusion that a sight is a component part of a firearm. *Davis*, 489 U.S. at 809 (noting that words of a statute are to be "read in their context and with a view to their place in the overall statutory scheme").  First, on its face, the PLCAA creates no distinction between an "accessory" or other "component parts" of a completed firearm.  Congress could have created that distinction, but elected not to do so for purposes of conferring immunity.  Second, the

---

[1]        Cambridge Dictionary, Dictionary, Component, available at https://dictionary.cambridge.org/us/dictionary/english/component (last visited June 24, 2024).

[2]        Cambridge Dictionary, Dictionary, Part, available at https://dictionary.cambridge.org/us/dictionary/english/part (last visited June 24, 2024).

PLCAA does not create was enacted with the express purpose of prohibiting civil lawsuits against manufacturers of firearms, ammunition, and component parts of firearms or ammunition for damages "resulting from the misuse of their products by others." *See* Preamble to 15 U.S.C. § 7901.  In passing the Act, Congress specifically incorporated a number of its findings into the Act, including: that lawsuits which seek to hold manufacturers liable for a third-party's misuse or illegal misuse of firearms or component parts of firearms invokes an undue burden on interstate commerce and that the businesses involved in the firearms industry should not be liable for harm caused by the misuse of their products when they function as designed.  *See id.* §§ 7901(a)(3)–(6).

Congress expressly found that manufacturers and sellers of firearms and component parts for firearms "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended."  *Id.* § 7901(a)(5).  In fact, the PLCAA's stated purpose is "[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearms products or ammunition products by others when the product functioned as designed and intended."  *Id.* § 7901(b)(1) (emphasis added).

The PLCAA is intended to provide broad protections to the firearms industry and to prevent lawsuits arising from the criminal misuse of lawfully manufactured and sold products.  *See, e.g., Ileto v. Glock, Inc.*, 421 F. Supp. 2d 1274, 1285 (C.D. Cal.

2006).  Concluding that a sight is a component part of a firearm is consistent with the intent and purpose of the PLCAA.  Following Plaintiffs' rationale, the PLCAA would not apply to manufacturers of aftermarket component parts of firearms (sights), which would clearly run counter to both the text and purposes of the PLCAA.  The PLCAA does not recognize any such distinction and it is not the province of the Court to judicially recognize one.

The only court to disagree that a sight is a component part of a firearm was not addressing the PLCAA, but rather construing the meaning or definition of the terms "parts" and "accessories" for purposes of excise taxes.  *Auto-Ordnance Corp. v. United States*, 822 F.2d 1566, 1570 (Fed. Cir. 1987).  The Texas Supreme Court has warned against relying on such cases when construing legislation directed to Second Amendment rights.  *See Academy*, 625 S.W.3d at 26 (rejecting reliance on trade cases to interpret Gun Control Act).

The PLCAA was enacted to prevent this precise type of lawsuit, and the Act's purposes would not be furthered by following Plaintiffs' legally unsupported argument.  Therefore, the PLCAA applies to this case.

## B. Plaintiffs did not plead an exception to PLCAA immunity, requiring dismissal.

Because the PLCAA applies, Plaintiffs bear the burden to plead and prove their claims against Oasis fall within one of the six exceptions to immunity.  *See Academy*, 625 S.W.3d at 26.  Those exceptions, listed in 15 U.S.C. § 7903(5)(A), are:

> i.    an action brought against a transferor convicted under section 924(h) of Title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;

ii.    an action brought against a seller for negligent entrustment or negligence per se;

iii.   an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including—

    I.    any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

    II.   any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18;

iv.    an action for breach of contract or warranty in connection with the purchase of the product;

v.     an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or

vi.    an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of Title 18 or chapter 53 of Title 26.

4869-1619-9113.4

Plaintiffs do not allege the Shooter was a prohibited purchaser. Plaintiffs do not allege the transfer to the Shooter constituted negligence per se, nor have they alleged the "predicate exception" described in 15 U.S.C. § 7905(5)(A)(iii) applies.[3] Plaintiffs also have not asserted a breach of contract, breach of warranty, or product liability claim against Oasis.

The only *possible* exception Plaintiffs may argue in response is the negligent entrustment exception. For the reasons discussed *infra* at § C, that exception does not apply to save Plaintiffs' claims from dismissal.

## C. The negligent entrustment exception does not apply.

Plaintiffs frame their claims as negligence related to the sale and transfer of products to the shooter, i.e., firearms, ammunition, and a sight. Pls.' Orig. Compl. at ¶¶ 22.1–22.11. The PLCAA defines "negligent entrustment" as "supply[ing] a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied to is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others." 15 U.S.C. § 7903(5)(B). Plaintiffs essentially argue that the definition gives rise to a cause of action, attempting to turn the PLCAA's definition

---

[3] The predicate exception applies when the manufacturer or seller of a qualified product knowingly violates a "State or Federal statute applicable to the sale or marketing of the product." 15 U.S.C. § 7903(5)(A)(iii). Because Texas law requires a statutory violation to support a claim for negligence per se, *Bryant v. Winn–Dixie Stores, Inc.*, 786 S.W.2d 547, 549 (Tex. App.—Ft. Worth 1990, writ denied), these two exceptions operate similarly for purposes of this case. Notably, Plaintiffs have not sued Oasis for knowingly violating a state or federal statute applicable to the sale or marketing of firearms, firearm components, or ammunition.

of negligent entrustment, Pls.' Orig. Compl. at ¶ 22.7, into a viable claim that can proceed past the filter Congress erected through the PLCAA.

While the PLCAA recognizes negligent entrustment as an exception to immunity, it does not create the cause of action.  15 U.S.C. § 7903(5)(C) (PLCAA does not create "public or private cause[s] of action or remed[ies]."); *Academy*, 625 S.W.3d at 30.  "Accordingly, courts generally apply state law on negligent-entrustment claims in evaluating whether the exception applies."  *Academy*, 625 S.W.3d at 30; *see also Timperio v. Bronx-Lebanon Hosp. Ctr.*, 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019) (plaintiff must satisfy state law requirements for exception to apply); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1225 (D. Colo. 2015) ("Although the PLCAA identifies negligent entrustment as an exception to immunity, it does not create a cause of action. Accordingly, the claim arises under state law.").

Texas does not recognize a negligent entrustment action against the seller of a product.  *Nat'l Convenience Stores, Inc. v. T.T. Barge Cleaning Co.*, 883 S.W.2d 684, 687 (Tex. App—Dallas 1994, writ denied) (Jan. 12, 1995) ("[W]e find negligent entrustment does not apply to the sale of a chattel."); *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 304 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Allen v. Wal-Mart Stores, LLC*, No. CV H-16-1428, 2017 WL 978702, at *11 (S.D. Tex. Mar. 14, 2017) (collecting cases), motion for relief from judgment denied, 2017 WL 7688383 (S.D. Tex. May 31, 2017).

The Texas Supreme Court affirmed this rule in *Academy* where it rejected an argument that the PLCAA's negligent entrustment exception applied to Academy's

sale of a gun to a mass shooter (at Sutherland Springs) because Academy allegedly "supplied the rifle to [the shooter] with reason to know that he was likely to use it in a manner involving unreasonable risk of harm." *Academy*, 625 S.W.3d at 30. The Texas Supreme Court stated: "we agree with Academy that no viable cause of action exists under Texas law for negligent entrustment based on a sale of chattel. In turn, we hold that the plaintiffs may not rely on the negligent-entrustment exception to pursue their claims." *Id.* at 30.

Similar allegations are at issue here, and the result must be the same. As noted above, Plaintiffs allege Oasis "knew and reasonably should have known that the Shooter was likely to use each of the items described above in a manner involving unreasonable risk of physical injury to himself and others." Pls.' Orig. Compl. at ¶ 22.7. In line with the holding of *Academy*, no viable cause of action exists for negligent entrustment (or sale/transfer) of a chattel in Texas. Accordingly, the negligent entrustment exception cannot apply to Plaintiffs' claims against Oasis.

### D. Plaintiffs' negligence claims are not exceptions to the PLCAA and fail.

Since none of the six enumerated exceptions to the PLCAA apply, Plaintiffs cannot maintain their claims – even as general negligence or gross negligence theories. The PLCAA expressly preempts *all* general negligence actions resulting from the criminal or unlawful use of a qualified product. *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 321–22 (Mo. 2016).

*In re Estate of Kim*, 295 P.3d 380, 386 (Alaska 2013) holds the same. There, the Alaska Supreme Court held that "[t]he statutory exceptions do not include general negligence, and reading a general negligence exception into the statute would

make the negligence per se and negligent entrustment exceptions a surplusage." The Ninth Circuit came to the same conclusion in *Ileto*: "Congress clearly intended to preempt common-law claims, such as general tort theories of liability[,]" including "classic negligence" claims. *Ileto*, 565 F.3d at 1135–36.

Trial courts have followed suit. In *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 46 (D.D.C. 2013), the court held the PLCAA "unequivocally" barred the plaintiff's negligence claim. *See also Phillips*, 84 F. Supp. 3d at 1226; *Travieso*, 2021 WL 913746, at *6 ("the provisions of the [PLCAA] indicate Congress intended to generally preempt common law torts.").

Like the courts before it, this Court should decline to create exceptions to PLCAA immunity that Congress plainly did not provide and, in fact, sought to curb through enacting the PLCAA. *Ileto*, 565 F.3d at 1135–36 ("Congress clearly intended to preempt common-law claims, such as general tort theories of liability"). Accordingly, Oasis is entitled to immunity from Plaintiffs' claims under the PLCAA, and Plaintiffs' claims must be dismissed.

## II. Plaintiffs' claims against Oasis fail under Texas law.

Plaintiffs have not pleaded a viable cause of action that fits within one of the PLCAA's six exceptions, so the Court need not reach this issue. But, even if it does, Plaintiffs' negligence claims (which are based on negligent entrustment / negligent sale / negligent transfer theories) still fail under Texas law.

First, for the reasons described above, Texas does not recognize a claim for negligent entrustment of a chattel. *See infra* at p. 12; *Academy*, 625 S.W.3d at 30–31. Regardless of whether the claim is negligence based on the alleged negligent

entrustment / sale of a firearm, ammunition or the sight, the claim fails as a matter of Texas law. This Court cannot depart from *Academy*. *Academy* forecloses *any theory* seeking to impose liability on Oasis for negligent entrustment of the products listed at ¶ 22.3—regardless of whether the product is a qualified product for purposes of the PLCAA. *Academy*, 625 S.W.3d at 31.

Second, Plaintiffs fail to allege any facts supporting the allegation that installing or adjusting the sight has any causal connection to the harms they suffered as a result of the Shooter's crimes—much less that Oasis failed to follow any cognizable standard of care in installing or adjusting the sight. Because Plaintiffs have not pleaded facts necessary to support any negligence theory with respect to Oasis' installation or adjustment of the sight, that claim fails as a matter of law.

Third, and more broadly, Oasis had no duty to prevent the Shooter's unforeseeable criminal conduct. In Texas, there generally "is no duty to control the conduct of third persons absent a special relationship [between the defendant and the third party], such as employer–employee, independent contractor–contractee, [or] parent–child." *Allen v. Wal-Mart Stores, LLC*, No. CV H-16-1428, 2017 WL 978702, at *10 (S.D. Tex. Mar. 14, 2017) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). Within these special relationships, there is a presumed right and ability to control the conduct of third persons, and in the absence of such a relationship, there is no duty to control a third person's conduct that caused harm. *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006). Here, because Oasis did not have a recognized special relationship with the purchaser, it had no

right or ability to control the purchaser's criminal use of the products he purchased, and it did not have a duty to protect others from his criminal conduct.[4]

Absent a special relationship, courts applying Texas law have refused to impose a duty to control the conduct of another and ordered dismissal based only on the pleadings. For example, in *Allen*, supra, the court declined to recognize a duty on the part of Wal-Mart to protect the plaintiff's decedent from harming herself despite an allegation that the harm was reasonably foreseeable. The plaintiff sued Wal-Mart, alleging negligence and negligence per se based on the sale of an "abusable volatile chemical in the form of a compressed inhalant" that was ultimately purchased and used by the plaintiff's decedent. *Allen*, 2017 WL 978702, at *2. In response to Wal-Mart's motion to dismiss, the plaintiff argued that Wal-Mart owed the decedent a duty to refrain from this sale because it was "reasonably foreseeable" that the product would be "misused" based on the nature of the chemical and the decedent's purchase of a towel that "could be used as paraphernalia" to inhale the chemical. *Id.* at *3. In

---

[4]     Even outside the context of traditional special relationships, Texas courts require the third party's conduct to be unquestionably the foreseeable result of the defendant's alleged negligence to impose a duty. *See, e.g.*, *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311–12 (Tex. 1987) (tavern owed duty to not serve alcohol to a patron who it knew or should have known was intoxicated because "[t]he risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee knows will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattlesnake in a shopping mall."); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 308–11 (Tex. 1983) (holding that employer who sent an employee home in an "extreme state of intoxication" owed a duty to person harmed by employee's negligence). The court in these cases imposed a duty on the tavern owner and employer to prevent another from driving while intoxicated because they had knowledge of both the person's intoxication and his intention to drive, and the foreseeable consequences of driving while intoxicated were not questioned. Another example is the property-liability line of cases. *See Timberwalk Apts. v. Cain*, 972 S.W.2d 749 (Tex. 1998); *De Lago Ptrs. v. Smith*, 307 S.W.3d 762 (Tex. 2010).

rejecting plaintiffs' argument, the court held that the plaintiff's allegations did not support a finding that it was reasonably foreseeable that the decedent intended to use the chemical product and the towel to harm herself. *Id.* at *16.

Even if the common law duty question is answered by considering only whether the harm inflicted on Plaintiffs was foreseeable, Texas courts hold that intentional criminal conduct is **not** foreseeable. *Cowart v. Kmart Corp.*, 20 S.W.3d 779, 784 (Tex. App.—Dallas 2000, pet. denied) (ammunition seller could not foresee that a sale would result in intentional misuse of the ammunition); *Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785, 788 (Tex. App.—Houston [14th Dist.] 1990, writ. denied) (holding intentional criminal conduct was not the foreseeable result of the sale of a handgun, even when to an underage buyer); *Holder v. Bowman*, No. 07-00-0126-CV, 2001 WL 62596 (Tex. App.—Amarillo Jan. 25, 2001, pet. denied) (similar).

The result here should be the same because there is no well-pled allegation that the purchaser's intentional criminal acts were foreseeable to Oasis based on information available to its salesperson.  Plaintiffs allege that Oasis's owner questioned how the Shooter could afford the products he purchased.  Pls.' Orig. Compl. at ¶¶ 22.4–22.6.  They reference excerpts from the Texas House of Representatives report on the Robb Elementary Shooting that other shoppers — "store witnesses"— said the purchaser "appeared odd and looked like one of those school shooters," or was "giving off bad vibes."  *Id.*  These allegations, taken as true, are not enough to show Oasis could reasonably foresee the Shooter's murderous

intent. *Twombly*, 550 U.S. at 570; *cf. Phillips*, 84 F. Supp. 3d at 1226 (no knowledge of criminal intent where Shooter purchased large quantity of ammunition). Nor can the Court find the purchaser's crimes were foreseeable based on "age" because—at least insofar as the federal government and Texas law are concerned—an eighteen-year-old is eligible to purchase the firearm and ammunition at issue in this case. Therefore, the Court cannot consider age as a factor in addressing foreseeability.

In sum, Oasis owed no duty to Plaintiffs, nor could it reasonably foresee the Shooter's horrific actions. Plaintiffs cannot maintain their negligence claims against Oasis—however they may be described—as a result. And, because gross negligence must be predicated on a viable negligence claim, which does not exist in this case, the Court must dismiss that claim, too.

## CONCLUSION

The PLCAA creates a substantive right of immunity for firearm and ammunition sellers not to be sued for harm caused by the criminal or unlawful misuse of qualified products. *See* 15 U.S.C. § 7902(a); *Academy*, 625 S.W.3d at 36; *see Beretta*, 524 F.3d at 394–95 ("Congress explicitly found that the third-party suits that the Act bars are a direct threat to the firearms industry," and "rationally perceived substantial effect on the industry [because] of the litigation that the Act seeks to curtail."). Plaintiffs' claims against Oasis fit within the PLCAA's immunity.

Oasis recognizes that Plaintiffs may disagree with the impact of the PLCAA on this case and the PLCAA more broadly. But, their remedy is legislative action, not affirmative litigation. There are strong reasons to defer to the legislative branches of government on matters relating to firearms and ammunition sales, which

are already subject to extensive federal, state, and local regulations.   15 U.S.C. § 7901(a)(4).   Preserving the legislatures' role in firearms and ammunition policymaking was among the PLCAA's purposes: "[t]o preserve and protect the Separation of Powers doctrine" found in the U.S. Constitution.   15 U.S.C. § 7901(b)(6). Congress deemed the PLCAA necessary because "liability actions" were seen as "attempt[s] to use the judicial branch to circumvent the Legislative branch of government."   15 U.S.C. § 7901(a)(8).   Therefore, if Plaintiffs want the PLCAA changed, they must look to Congress, not the courts.

For these reasons, Oasis asks the Court to order the immediate dismissal of Plaintiffs' claims against it.

Respectfully submitted,

GRAY REED

/s/ A.M. "Andy" Landry, III
_____
A.M. "Andy" Landry III
State Bar No. 11868750
J.J. Hardig, Jr.
State Bar No. 24010090
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
(713) 986-7000 (Telephone)
(713) 986-7100 (Fax)
Email: alandry@grayreed.com
Email: jhardig@grayreed.com

-and-

JEFFERSON CANO

/s/ Lamont A. Jefferson
_____
Lamont A. Jefferson
State Bar No. 10607800
Emma Cano
State Bar No. 24036321
122 E. Pecan St., Suite 1650
San Antonio, Texas 78205
(210) 988-1808 (Telephone)
(210) 988-1808 (Fax)
Email: ljefferson@jeffersoncano.com
Email: ecano@jeffersoncano.com

**ATTORNEYS FOR DEFENDANT
OASIS OUTBACK, LLC**

24

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically served upon all counsel of record through the CM/ECF system on this 19th day of July, 2024.

_s/ A.M. "Andy" Landry, III_
A.M. "Andy" Landry, III