**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | |
|---|---|
| ARNULFO REYES, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL DEFENSE, LLC, et al.,<br><br>Defendants. | Case No.: 2-24-cv-00073-AM |

**DEFENDANTS EOTECH, LLC'S AND PROJECT ECHO HOLDINGS, LLC d/b/a AMERICAN HOLOPTICS'S MOTION TO DISMISS**

Defendants EOTECH, LLC ("EOTECH") and Project Echo Holdings, LLC d/b/a American Holoptics ("Project Echo"), by and through their attorneys, respectfully move to dismiss Plaintiffs' claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## SUMMARY OF THE ARGUMENT

EOTECH is a manufacturer of optical sights for firearms. Project Echo is the parent corporation of EOTECH. Salvador Ramos (the "Shooter") purchased a holographic rifle sight from EOTECH through its website. On May 24, 2022, the Shooter used a rifle with the EOTECH sight to shoot and kill his grandmother, before going to Robb Elementary School in Uvalde, Texas where he used it to shoot nineteen students and two teachers, including Plaintiffs and their decedents. Plaintiffs' claims against EOTECH for negligence, gross negligence, and aiding and abetting the wrongful conduct of others should be dismissed for several reasons, each of which independently require dismissal.

First, Plaintiffs' claims should be immediately dismissed because they are barred by a federal immunity statute, the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-03

("PLCAA"). The PLCAA prohibits lawsuits against federally licensed manufacturers of component parts for firearms, such as EOTECH, seeking to recover damages and other relief arising from the criminal or unlawful misuse of firearms by third parties, from being filed in state or federal court. The PLCAA provides substantive immunity from even having to present a defense against prohibited claims.

Second, Plaintiffs' claims against EOTECH should be dismissed for failure to state a claim upon which relief can be granted pursuant to Texas law because it did not breach any duty owed to Plaintiffs by selling the sight to the Shooter. Third, Plaintiffs' claims against EOTECH should be dismissed for failure to state a claim upon which relief can be granted pursuant to Texas law based on lack of causation because of the intentional criminal conduct of the Shooter. Fourth, Plaintiffs' claim for aiding and abetting should be dismissed because such claim is not recognized under Texas law. Fifth, in addition to the above grounds, Plaintiffs' claims against Project Echo should also be dismissed because the sole basis upon which it is alleged to be liable is its ownership of EOTECH, and there are no grounds asserted to pierce the corporate veil and hold it liable as the alter ego of EOTECH.

**BACKGROUND**

Based on the allegations in the Petition, which are assumed to be true for purposes of this motion, when he was seventeen years old, the Shooter purchased a Hell-Fire Gen 2 snap-on trigger ("Hell-Fire Trigger") from Firequest International, Inc. ("Firequest") through its website, and an EOTECH HWS XPS2 holographic sight ("Sight") from EOTECH's website. After he turned eighteen, the Shooter purchased a DDM4v7 semi-automatic rifle ("Subject Rifle") online through Daniel Defense, LLC's ("Daniel Defense") website. Daniel Defense shipped the Subject Rifle to Oasis Outback, LLC ("Oasis"), a federally licensed firearms dealer in Texas. Oasis transferred the

Subject Rifle to the Shooter on May 20, 2022. The Shooter brought the Sight with him to Oasis, and Oasis installed it on the Subject Rifle for him. Pet. ¶ 7.201. On May 24, 2022, the Shooter used the Subject Rifle with the Hell-Fire Trigger and Sight installed on it to shoot and kill his grandmother, with whom he was living at the time. *Id.* ¶¶ 8.8-8.31. He then went to Robb Elementary School in Uvalde, Texas where he used the Subject Rifle to shoot nineteen students and two teachers before he was shot and killed by responding police officers. *Id.* ¶¶ 8.8-8.31.

Plaintiffs filed a petition in the District Court of Uvalde County, Texas, 38th Judicial District on May 24, 2024, naming Daniel Defense and its alleged parent companies (Daniel Defense Holdings, LLC and M.C. Daniel Group, Inc.), Firequest and its alleged parent company (Flash Co., Inc.), Oasis, and EOTECH and its alleged parent companies (Project Echo and Koucar Management, LLC) as defendants. Plaintiffs raise causes of action against EOTECH and Project Echo for negligence, gross negligence, and aiding and abetting the alleged wrongful conduct of Daniel Defense. Plaintiffs contend that EOTECH markets the Sight in a manner designed to appeal to young men who intend to use firearms to commit crimes, and works in tandem with Daniel Defense to advertise its rifles equipped with EOTECH sights. On July 12, 2024, Daniel Defense, Daniel Defense Holdings, LLC, and M.C. Daniel Group, Inc. removed this case to this Court. Not. of Removal (ECF No. 1).

**<u>STANDARD OF REVIEW</u>**

In order to survive a motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp v. Twombley*, 550 U.S. 544, 555 (2007). Instead, a complaint must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombley*, 550 U.S. 558 (cleaned up).

## ARGUMENT

### I. PLAINTIFFS' CLAIMS AGAINST EOTECH MUST BE IMMEDIATELY DISMISSED PURSUANT TO THE PLCAA.

#### A. The PLCAA was Passed to Provide Immunity to Dealers From Lawsuits Seeking to Hold Them Liable for the Criminal Misuse of Lawful Products.

The PLCAA, which was enacted on October 26, 2005, prohibits the institution of a "qualified civil liability action" in any state or federal court. 15 U.S.C. § 7902(a). Because the PLCAA provides complete and substantive immunity from suit, not just a defense from liability, PLCAA immunity must be decided at the earliest available opportunity. *In re Academy, Ltd.*, 625 S.W.3d 19, 35-36 (Tex. 2021) (unanimously granting petition for mandamus and holding that requiring defendant to present a defense on the merits to a case barred by the PLCAA would defeat the substantive immunity provided by the statute).

One of the stated purposes of the PLCAA is to "prohibit causes of action against manufacturers [and] distributors . . . for the harm solely caused by the criminal or unlawful misuse of firearm products . . . by others when the product functioned as designed and intended." *Id.* § 7901(b)(1). Congress made a number of findings regarding the necessity to enact the PLCAA, including:

- Lawsuits have been commenced against manufacturers, distributors, dealers and importers of firearms that operate as designed and intended which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

- The manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws. Such Federal laws include the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act.

- Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

15 U.S.C. §§ 7901(a)(3)-(5). Based upon its findings the express purposes stated therein, Congress enacted the PLCAA to prohibit qualified civil liability actions, such as this case, from being "brought in any Federal or State court." *Id.* § 7902(a).

**B. <u>This Case is a Qualified Civil Liability Action.</u>**

As defined by the PLCAA, and subject to six limited exceptions, a "qualified civil liability action" barred from being filed in any state or federal court is defined as a:

> civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product or a trade association, for damages, punitive damages, injunctive or declaratory relief, or penalties or other relief resulting from the criminal or unlawful misuse of a qualified product by the person or a third party . . . .

15 U.S.C. § 7903(5)(A). Based on the allegations in the Petition, this case is a civil proceeding brought by persons (Plaintiffs) against a manufacturer (EOTECH)[1] of a qualified product (the Sight) for damages and other relief based on the criminal use of qualified products (the shooting) by a third party (the Shooter). *See generally* Pet.

**C. <u>EOTECH is a Manufacturer.</u>**

[1] Plaintiffs' claims against Project Echo are solely based on its position as EOTECH's parent, therefore all of their claims against Project Echo should also be dismissed for the same reasons as their claims against EOTECH.

The PLCAA defines a "manufacturer," with respect to a qualified product, as "a person who is engaged in the business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in business as such a manufacturer under chapter 44 of title 18, United States Code." 15 U.S.C. § 7903(2). Chapter 44 of title 18 of the United States Code defines a manufacturer as "any person engaged in the business[2] of manufacturing firearms . . . for purposes of sale or distribution; and the term 'licensed manufacturer' means any such person licensed under the provisions of this chapter." 18 U.S.C. § 921(a)(10). As a federally licensed manufacturer of firearms,[3] EOTECH is a "manufacturer" pursuant to the terms of the PLCAA. Pet. ⁋ 7.81 (Sight was "manufactured by Defendant EOTECH").

### D. <u>The Sight is a Qualified Product.</u>

The PLCAA defines a "qualified product," in part, as a "firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of title 18, United States Code) . . . that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4). Pursuant to 18 U.S.C. § 921(a)(3)(A), a firearm is defined as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Pursuant to the allegations in the Petition, the Subject Rifle is a firearm and therefore a qualified product pursuant to the terms of the PLCAA. *See generally* Pet. The PLCAA also defines a "component part of a firearm" as a

---

[2] The term "engaged in the business," relative to a manufacturer of firearms, is defined as "a person who devotes time, attention, and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured." 18 U.S.C. § 921(a)(21)(A).

[3] EOTECH holds a type 07 (manufacturer of firearms) federal firearms license ("FFL") (No. 4-38-163-07-7C-12525) for the premises located at 46900 Port Street, Plymouth, MI 48170, the address for it listed in paragraph 3.12 of the Petition. This can be verified through the ATF's list of all FFL holders (https://www.atf.gov/firearms/listing-federal-firearms-licensees), of which this Court can take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. *Ambler v. Williamson Cnty., Tex.*, No. 1-20-CV-1068-LY, 2021 WL 769667, at *3 (W.D. Tex. Feb. 25, 2021).

qualified product. 15 U.S.C. § 7903(4). The term "component part" is not further defined in the PLCAA or the Gun Control Act.

Based on the allegations in the Petition, the Sight is a component part of a firearm and therefore a qualified product for purposes of the PLCAA. The term "component" is defined as "a part that combines with other parts to form something bigger."[4] A "part" is defined as "a separate piece of something, or a piece that combines with other pieces to form the whole of something."[5] As alleged in the Petition, the Shooter had the Sight "install[ed]" on the Subject Rifle, such that it constituted a component part of the Subject Rifle. Pet. ⁋ 7.201; *see also id.* ⁋⁋ 7.111, 7.115 (explaining that rifles are "equipped with EOTECH" sights). Courts have previously confirmed the straightforward conclusion that such parts are component parts for purposes of the PLCAA. *See, e.g.*, *Lowy v. Daniel Defense, LLC*, No. 1:23-cv-1388-CMH-IDD, 2024 WL 3521508, at *3 (E.D. Va. July 24, 2024) (holding that when aftermarket magazines and grips were installed on a rifle, "they become component parts of the newly assembled firearm" for purpose of the immunity provided by the PLCAA); *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1185. 1189 (D. Nev. 2018) (aftermarket stock is qualified product under PLCAA); *In re Academy, Ltd.*, 625 S.W.3d at 29 (magazine is qualified product for purposes of PLCAA).

Relevant provisions in publications by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") also refer to sights as being component parts of firearms. The ATF's Guidebook - Importation & Verification of Firearms, Ammunition, and Implements of War, attached as Exhibit 1, identifies the sights as "component parts" of a semiautomatic rifle.

---

[4] Cambridge Dictionary, Dictionary, Component, available at https://dictionary.cambridge.org/us/dictionary/english/component (last visited Nov. 1, 2024).

[5] Cambridge Dictionary, Dictionary, Part, available at https://dictionary.cambridge.org/us/dictionary/english/part (last visited Nov. 1, 2024).

Similarly, the ATF's Firearm Component Identification Guide, attached as Exhibit 2, identifies sights as being component parts of rifles used for aiming. As alleged in the Petition, the Sight was combined with other parts to form the whole of something bigger – the Subject Rifle – and is therefore a qualified product for purposes of the PLCAA.

### E. **<u>The Petition Seeks Damages and Other Relief Resulting from the Criminal Use of a Qualified Product by a Third Party.</u>**

According to the allegations in the Petition, Plaintiffs are seeking damages and other relief arising from the criminal use of the Subject Rifle by a third party, the Shooter. Plaintiffs seek relief because the Shooter used the Subject Rifle to intentionally shoot them and their decedents. Such actions by the Shooter violated criminal laws including murder, Tex. Penal Code § 19.02, and assault, *id.* § 22.01.

Accordingly, the alleged damages and other relief sought by the Plaintiffs resulted from the criminal use (the shooting) of a qualified product (the Subject Rifle) by a third party (the Shooter). The claims in the Petition therefore constitute a qualified civil liability action, from which the PLCAA provides EOTECH and Project Echo with complete immunity by prohibiting this action from even being "brought in any Federal or State court," unless one of the statute's narrow exceptions applies.

### F. **<u>Plaintiffs' Claims are Barred Because No Exceptions to the PLCAA Apply.</u>**

There are six narrow categories of claims that the PLCAA excludes from the definition of a qualified civil liability action and therefore does not bar. 15 U.S.C. § 7903(5)(A). There are no exceptions to the PLCAA that would allow the claims against EOTECH and Project Echo to proceed. The PLCAA prohibits any claims brought under a general negligence theory. *See Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 (9th Cir. 2009) (PLCAA bars general negligence claims); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 322 (Mo. 2016) ("PLCAA expressly preempts all

general negligence actions seeking damages resulting from the criminal or unlawful use of a firearm"); *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013) ("reading a general negligence exception into the statute would make the negligence per se and negligent entrustment exceptions a surplusage"). All of Plaintiffs' claims against EOTECH and Project Echo—negligence, gross negligence, and aiding and abetting the wrongful conduct of others—are premised on negligence. Thus, all of Plaintiffs' claims against EOTECH must all be dismissed as barred by the PLCAA.

## II. PLAINTIFFS CANNOT ESTABLISH BREACH OF DUTY.

This Court should also dismiss Plaintiffs' claims against EOTECH for the independent reason that Plaintiffs have failed to allege facts to show that EOTECH breached any duty owed to Plaintiffs, a necessary element of each of their negligence-based claims.[6] The "the existence of duty is a question of law for the court to decide." *Greater Houston. Transp. Co. v. Philips*, 801 S.W.2d 523, 525 (Tex. 1990). "Generally, there is no duty to protect others from the criminal acts of third parties." *Park v. Exxon Mobil Corp.*, 429 S.W.3d 142, 145 (Tex. App. 2014) (citing *Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008); *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998)); *see also Holcombe v. United States*, 388 F. Supp. 3d 777, 802 (W.D. Tex. 2019) (under Texas law, "there is generally no duty to protect another from the criminal acts of a third party or to come to the aid of another in distress"); *Washington v. U.S. Dep't of Hous. & Urb. Dev.*, 953 F. Supp. 762, 771 (N.D. Tex. 1996) ("In Texas, as a general rule, a defendant has no duty to prevent the criminal acts of a third party who does not act under the defendant's supervision or control.").

---

[6] "A cause of action for negligence in Texas requires three elements. There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).

This notion applies in the context of seller of a firearms product that is later used in a criminal act, with the exception of where a seller knew or should have known that the sale was likely to result in the criminal act. *See Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d 125, 131 (Tex. App. 1997). A plaintiff's claim against a firearm product seller for having sold a product that was later involved in a criminal shooting should be dismissed if the plaintiff has not alleged facts that can substantiate that the seller knew or should have known that the purchaser would use the product "in an improper or negligent manner." *Id.*

Here, EOTECH lawfully sold the Sight to the Shooter. Plaintiffs rely solely on conclusory assertions as to EOTECH's alleged knowledge that the Shooter might do something criminal, but their allegations are general as to all purchasers of similar products. Plaintiffs have not alleged a single specific fact suggesting that EOTECH knew, or had reason to know, that the Shooter in particular intended to do anything criminal with the Sight, which was perfectly legal[7] for EOTECH to sell and the Shooter to own. Thus, this Court should dismiss all of Plaintiffs' claims against EOTECH because Plaintiffs have failed to allege facts to establish any breach of a duty it owed to them.

## III. PLAINTIFFS CANNOT ESTABLISH CAUSATION.

This Court should additionally dismiss all of Plaintiffs' claims against EOTECH for lack of causation. "[A] lack of causation 'may be established as a matter of law where the circumstances are such that reasonable minds could not arrive at a different conclusion.'" *Salt & Light Energy Equip., LLC v. Origin Bancorp, Inc.*, No. 3:22-CV-00654-N, 2024 WL 1184421, at *4 (N.D. Tex. Mar. 19, 2024) (quoting *Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 781 (Tex. App.

---

[7] Plaintiffs make reference to EOTECH's website not having "age-verification measures," Pet. ⁋14.3(b), but no law imposes a minimum age to purchase the EOTECH Sight.

1996)); *see also Johnson v. Walker*, No. 09-22-00255-CV, 2023 WL 2182299, at *5 (Tex. App. Feb. 23, 2023) ("While the issue of proximate cause is generally a question of fact, some causes in fact do not constitute legal causation as a matter of law.") (citing *Phan Son Van v. Pena*, 990 S.W.2d 751, 755–56 (Tex. 1999)). Proximate cause "may also be a question of law for the court when the relationship between the defendant's acts or omissions and the plaintiff's injuries is attenuated or remote." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 812 (S.D. Tex. 2009).

"Proximate cause has two elements: cause in fact and foreseeability." *Reyes v. Dollar Tree Stores, Inc.*, 221 F. Supp. 3d 817, 832 (W.D. Tex. 2016). Here, Plaintiffs' claims against EOTECH fail for lack of causation for three independent reasons: (1) Plaintiffs have failed to allege facts to support foreseeability; (2) Plaintiffs have failed to allege facts to support causation in fact; and (3) the criminal Shooting was an intervening, superseding cause that broke any causal link possibility attributable to EOTECH.

**A. Plaintiffs' Harm Was Not Foreseeable.**

"'Foreseeability' means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). "The Supreme Court of Texas has held that the foreseeability analysis under duty is the same as the foreseeability analysis under proximate cause." *Reyes*, 221 F. Supp. 3d at 832. "Therefore is it appropriate, in determining if an injury was foreseeable, for a court to simply refer[ ] to its previous discussion of foreseeability under 'duty.'" *Id.*

Plaintiffs have failed to allege any facts to show that EOTECH should have foreseen that the Shooter would criminally misuse its legal product in connection the shooting. EOTECH's lawful sale of the Sight is not—and cannot—be sufficient to find that EOTECH knew or should

have known that the Shooter would engage in the criminal Shooting. Thus, Plaintiffs cannot establish proximate cause as a matter of law for lack of foreseeability.

### B. EOTECH's Sale of the Sight was Not a Substantial Factor in Plaintiffs' Harm.

In addition to foreseeability, "[t]o be a legal cause of another's harm, the negligence also must be a substantial factor in bringing about the plaintiff's harm." *Arguelles v. Kellogg Brown & Root, Inc.*, 222 S.W.3d at 731 (Tex. App. 2007); *see also Wilbourn v. BRG Sports, Inc.*, 569 F. Supp. 3d 445, 453 (N.D. Tex. 2021) ("Causation for . . . negligence . . . turns on whether an alleged cause of an injury may be recognized as a substantial factor."). "The word 'substantial' is used to denote the fact that the defendant's conduct had such an effect in producing the harm as to lead reasonable people to regard it as a cause, using that word in the popular sense, which includes the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." *Arguelles*, 222 S.W.3d at 731. To be a substantial factor, a "[d]efendants' conduct must do more than 'furnish the condition that makes the plaintiff's injury possible' and cannot be too remotely connected to the injury." *Wilbourn*, 569 F. Supp. 3d at 454 (quoting *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995)).

In other words, "at some point in the causal chain, a defendant's conduct may be too remotely connected with the plaintiff's injury to constitute legal causation." *Arguelles v. Kellogg Brown & Root, Inc.*, 222 S.W.3d 714, 731 (Tex. App. 2007); *see also In re Enron Corp.*, 623 F. Supp. 2d at 811. Indeed, as a basic notion of fairness, "[t]he law does not hold people legally responsible for the remote results of their wrongful acts and therefore draws a line between immediate and remote causes." *Arguelles*, 222 S.W.3d at 731. Thus, "[o]ften the causal link

between conduct and injury will be too remote to be legally significant when two separate and sequential incidents that are allegedly tortious join to lead to the injury." *Id.*

Under that frame of analysis, the Supreme Court of Texas has addressed situations where a product was merely tangential to, or too remote from, an alleged injury and, thus, was not the cause of the plaintiff's harm as a matter of law. *See IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). Specifically, the Supreme Court of Texas has held as follows:

- A prior car accident is "not the proximate cause of the deaths and injuries" of "individuals [who] were hit by a [different] car while removing debris from [the] earlier car accident." *Id.* (citing *Bell v. Campbell*, 434 S.W.2d 117, 118–22 (Tex. 1968).

- The manufacturer of an allegedly defective "flashing arrow sign" was, "as a matter of law," not the cause of the death of a highway department worker who stopped to assess the malfunctioning sign, which was struck by a passing vehicle and then, in turn, struck and killed the worker because the death was "too remotely connected with" the manufacturer's conduct. *Id.* (citing *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471–72 (Tex. 1991)).

- The manufacturer of an allegedly faulty pump was not the cause of the injury of Texaco facility worker where the worker alleged that "defective pump . . . caused [a] fire, which in turn led to the pipe rack being wet and slippery, and ultimately caused her injuries" because "[t]he pump, by causing a fire, did no more than create the condition which made the plaintiff's injuries possible," which "falls short as a matter of law of satisfying the substantial factor test." *Id.* (citing *Union Pump*, 898 S.W.2d at 774–75).

Moreover, the recent *Lowy* decision solidifies this point. *See Lowy*, 2024 WL 3521508. There, in addition to finding the plaintiffs' claims barred by the PLCAA, the U.S. District Court for the Eastern District of Virginia rejected the notion that firearm-related business activities (such as marketing) caused a criminal shooting. *See id.* at *5. The court explained, "plaintiffs' allegations that Shooter relied on defendants' advertisements are conclusory," the "pleadings fail to allege defendants' advertisements caused Shooter's singular attack," and that merely alleging "*some* causation (defendants' advertisements intentionally caused consumers' purchases)" does

not mean that plaintiffs have "alleged[d] proximate causation (defendants' advertisements intentionally caused Shooter's attack)." *Id.*

Here, the Sight was merely tangential to the Shooter's criminal actions in committing the shooting—and, indeed, even to the Subject Firearm itself—and EOTECH's actions come nowhere close to being "a substantial factor in bringing about the plaintiff's harm." *Arguelles*, 222 S.W.3d at 731. Even if the Shooter actually viewed any marketing concerning the Sight, the law, as explained in *Lowy*, is clear that such a circumstance would, at most, be causation as to the purchase of the Sight, not the shooting. Any argument by Plaintiffs that the Sight caused the Shooter to commit the criminal Shooting—as opposed to his volition and actions—borders on absurdity, especially given that Plaintiffs have conceded that the Shooter was able to proceed with his criminal shooting at will without intervention for 77 minutes. Pet. ⁋ 3.4. EOTECH's sale of the Sight merely was part of the many circumstances involved in the Shooter's decision to commit, and actions taken in, the shooting, which, under Texas law, is plainly insufficient to constitute a legal cause. Accordingly, Plaintiffs' claims against EOTECH fail for lack of causation as a matter of law.

### C. <u>The Shooting was an Intervening, Superseding Cause.</u>

"[A] new and independent, or superseding, cause may intervene[ ] between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016). "A new and independent cause thus destroys any causal connection between the defendant's negligence and the plaintiff's harm, precluding the plaintiff from establishing the defendant's negligence as a proximate cause." *Id.*

Under that standard, "'[u]sually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability.'" *Reyes*, 221 F. Supp. at 826 (quoting *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 550 (Tex. 1985)); *see also St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 714 (5th Cir. 2002) (under Texas law, "[u]sually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability"); *Johnson*, 2023 WL 2182299, at *5 ("'act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime'") (quoting *Phan Son Van*, 990 S.W.2d at 753).

Courts in Texas have specifically addressed causation in the realm of an intervening act of a criminal who shot someone with a firearm after an allegedly negligent act of a defendant in connection with supplying the firearm or firearm products. The following decisions make clear that such a criminal shooting breaks the causal chain unless the supplier of the firearm or firearm product knew, or had reason to believe, that the recipient would commit a criminal shooting:

- One Texas court held that a claim against a company that kept a firearm on premises for negligently allowing access to the firearm by an employee who took it and used it to criminally kill her husband failed for lack of causation because the plaintiffs had not shown that the company "knew or should have known that [the employee] would use the gun to shoot" someone in a criminal manner. *Johnson*, 2023 WL 2182299, at *5 (citing *Richardson v. Crawford*, No. 10-11-00089-CV, 2011 Tex. App. LEXIS 8150 at *7, **9–24 (Tex. App.—Waco, Oct. 12, 2011, pet. denied)).

- Another Texas court held that a claim against a firearms dealer from which a firearm that was stolen and later used in a carjacking-related murder failed for lack of causation because "failure to exercise care in the storage and display of its firearms was too remote and attenuated from the criminal conduct of the carjackers to constitute a legal cause of injury," and the dealer "did nothing more than create the condition that enabled someone to steal

the gun." *Id.* (citing *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 263 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)).

- Yet another Texas court upheld the granting of a motion dismiss where the plaintiffs "failed to state a cause of action alleging that [defendant] knew or should have known that his gun would be stolen and thereafter used in an accidental shooting involving minors, thereby negating proximate cause" given that "[t]he alleged criminal conduct . . . in stealing [the] firearm is a superseding cause that destroyed the causal connection (if any)." *Id.* at *6.

- And another decision of a Texas court upheld a trial court's decision that plaintiffs, representatives of a person killed in shooting, failed to establish proximate causation against Kmart for "negligently selling ammunition . . . used to shoot and kill" the person, which shooting was an intervening cause, because there was no "fact that should have alerted any Kmart employee that [third parties] would put the bullets in hand of someone who would engage in criminal conduct." *Cowart v. Kmart Corp.,* 20 S.W.3d 779, 782 (Tex. App. 2000).

- Another Texas court upheld a trial court decision that a criminal shooting using a firearm that a sporting goods store sold was an intervening act that broke any causal chain attributable to the store where the plaintiff "failed to present any . . . evidence that [the] intervening criminal conduct was foreseeable," such as that "there was anything [the shooter] said or did, or anything in his behavior or demeanor, that would have placed [the store] or its employee . . . on notice that, if possessed of the gun, [the shooter] would engage in criminal conduct." *Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785, 787 (Tex. App. 1990), *writ denied* (Nov. 21, 1990).

- And another Texas court affirmed a trial court decision in favor of a pawn shop that sold ammunition that was later used in a criminal shooting because no facts showed that the pawn shop "could have discerned that" the shooter "was incompetent, reckless or dangerous at the time of the sale of the ammunition and therefore, his subsequent criminal conduct was foreseeable." *Holder v. Bowman*, No. 07-00-0126-CV, 2001 WL 62596, at *4 (Tex. App. Jan. 25, 2001).

The reasoning of these cases applies equally to Plaintiffs' claims against EOTECH. Plaintiffs have alleged no facts, beyond mere conclusory assertions, to establish that EOTECH knew, or even had any reason to believe, that after EOTECH completed a lawful sale of the perfectly legal Sight, the Shooter would engage in a criminal shooting using the Subject Rifle on which it was installed. The Shooter's criminal shooting is the textbook definition of a superseding, intervening cause, breaking any chain of causation potentially attributable to EOTECH. Accordingly, the Court should dismiss Plaintiffs' claims against EOTECH for lack of causation.

## IV. PLAINTIFFS' CLAIM FOR AIDING AND ABETTING SHOULD BE DISMISSED BECAUSE TEXAS LAW DOES NOT RECOGNIZE SUCH CLAIM.

Plaintiffs seek to hold EOTECH liable for purportedly "aiding and abetting" the alleged wrongful conduct of Daniel Defense because it allegedly encouraged the use of its sights on rifles made by Daniel Defense, and marketed its sights installed on rifles made by Daniel Defense. Pet. ¶¶ 15.2-15.6. Plaintiffs' claim against EOTECH for "aiding and abetting" should be dismissed because the Texas Supreme Court has never recognized such a cause of action, *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017), and the Fifth Circuit Court of Appeals has held that such claim does not exist under Texas law, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018). For that reason, claims for "aiding and abetting" are routinely dismissed on the pleadings. *See, e.g., Hampton v. Equity Tr. Co.*, 607 S.W.3d 1, 5 (Tex. App.—Austin 2020, pet. denied) (concluding that a "common-law cause of action for aiding and abetting does not exist in Texas"); *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 Fed. Appx. 239, 249–50 (5th Cir. 2020) (affirming dismissal of claim for aiding and abetting). Plaintiffs' claim against EOTECH for aiding and abetting should therefore be dismissed because such claim is not cognizable under Texas law.

## V. PLAINTIFFS HAVE FAILED TO ALLEGE A BASIS FOR PUNITIVE DAMAGES.

Plaintiffs request an award of punitive and exemplary damages on the basis that the "malicious, reckless, and wanton acts and/or omissions of [EOTECH] constituted gross negligence." Pet. ¶ 35.1. The acts based on which the Plaintiffs seek to hold EOTECH liable are its sale of the Sight to the Shooter. Texas law only allows punitive damages for harm resulting

from fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem. Code § 41.003(a). For purposes of an award of punitive damages, "gross negligence" is defined as an "an act or omission:"

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

*Id.* § 41.001(11). As explained by the Texas Supreme Court, this gross negligence definition:

> contains both an objective and a subjective component. Subjectively, the defendant must have actual awareness of the extreme risk created by his or her conduct. Objectively, the defendant's conduct must involve an "extreme degree of risk," a threshold significantly higher than the objective "reasonable person" test for negligence. Extreme risk is a function of both the magnitude and the probability of the anticipated injury to the plaintiff. [T]he "extreme risk" prong is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.

*Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 16–17 (Tex. 1994) (cleaned up), *superseded by statute on other grounds as stated in U-Haul Int'l, Inc.*, 380 S.W.3d 118 (Tex. 2012). The Sight itself is not dangerous or capable of causing harm other than if used as a blunt object. The sale of the Sight to the Shooter is not remotely something that could be considered likely, i.e., more probable than not, to result in serious injury to Plaintiffs. Accordingly, their request for punitive damages must be dismissed.

## VI. PLAINTIFFS' CLAIMS AGAINST PROJECT ECHO SHOULD ALSO BE DISMISSED BECAUSE THEY ALLEGE NO BASIS TO PIERCE THE CORPORATE VEIL.

In addition to all of the reasons why their claims against EOTECH should be dismissed, Plaintiffs' claims against Project Echo should be dismissed for the additional reason that they fail to allege any factual basis to hold it liable as EOTECH's parent. "Under Texas law, a parent company has no duty to control its subsidiaries and, therefore, is not liable for the torts of its

subsidiaries." *Doe v. Camp Recovery Centers, L.P.*, No. 5:15-CV-566 RP, 2017 WL 11027178, at *6 (W.D. Tex. Jan. 11, 2017); *see also R&M Mixed Beverage Consultants, Inc. v. Safe Harbor Benefits, Inc.*, 578 S.W.3d 218, 229 (Tex. App. 2019) ("fact that a corporation may be a parent of a subsidiary corporation does not automatically render it liable for the actions of its subsidiaries"); *Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 717 (Tex. App. 2013) ("parent corporations generally have no duty to control their subsidiaries"); *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Properties, L.C.*, 323 S.W.3d 322, 350 (Tex. App. 2010) ("[a]s a general rule, a parent corporation is not liable for the torts of its subsidiaries") (citing *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984)). These limitations on "[v]eil-piercing and alter ego principles apply equally to corporations and LLCs." *Sterett Equip. Co., LLC v. PH Steel, Inc.*, No. 1:22-CV-476, 2024 WL 1179788, at *12 (E.D. Tex. Mar. 19, 2024) (citing *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013)).

In other words, "subsidiary corporations and parent corporations are considered separate and distinct 'persons' as a matter of law, and the separate entity of corporations will generally be observed by the courts *even where* one company may dominate or control the other company, or treats the other company as a mere department, instrumentality, or agency." *R&M Mixed Beverage Consultants*, 578 S.W.3d at 229 (emphasis added). The Texas Supreme Court has "never held corporations liable for each other's obligations merely because of centralized control, mutual purposes, and shared finances." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008)); *see also Little*, 409 S.W.3d at 717 ("court cannot infer duty from evidence showing actual control or a right of control over the general operation").

Rather, "there must also be evidence of 'abuse, or . . . injustice and inequity' before one corporation may be held liable for another's obligations, or in other words, before a court will

pierce the corporate veil to hold the parent company liable for its subsidiary's actions." *R&M Mixed Beverage Consultants*, 578 S.W.3d at 230 (quoting *SSP Partners*, 275 S.W.3d at 455); *see also Sterett Equip.*, 2024 WL 1179788, at *12 ("Under Texas's veil piercing doctrine, courts may disregard the corporate fiction . . . . when the corporate form has been used as part of a basically unfair device to achieve an inequitable result."). Thus, a plaintiff may only pierce the corporate veil to reach a parent company for the alleged negligence of a subsidiary where a plaintiff demonstrates "'the kinds of abuse . . . that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like.'" *Id.* (quoting *SSP Partners*, 275 S.W.3d at 455).

Plaintiffs' sole reason for naming Project Echo as a defendant is that it is the parent company of EOTECH. Pet. ¶¶ 3.13–3.15. Plaintiffs have not alleged any facts that even attempt to demonstrate any "fraud, evasion of existing obligations, circumvention of statutes, monopolization, [or] criminal conduct" in connection with the corporate relationship between Project Echo and EOTECH. *R&M Mixed Beverage Consultants*, 578 S.W.3d at 230. Thus, no basis exists for holding Project Echo liable based on the alleged actions of EOTECH. Accordingly, the Court should dismiss all claims against Project Echo on this additional, independent basis.

**CONCLUSION**

For the above reasons, EOTECH and Project Echo respectfully request that this Court grant this motion, dismiss all claims against them in Plaintiffs' Petition with prejudice, and grant such other relief as it deems just and proper.

Dated: November 1, 2024

Respectfully submitted,

By: *<u>/s/ Daniel Buechler</u>*
Daniel Buechler (State Bar No. 24047756)

**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
Plaza of the Americas
700 North Pearl Street, Twenty-Fifth Floor
Dallas, TX 75201-2832
Telephone: (214) 871-8262
Facsimile: (214) 871-8209
E-Mail: dbuechler@thompsoncoe.com

-and-

Zandra Foley (State Bar No. 24032085)
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
4400 Post Oak Parkway, Suite 1000
Houston, TX 77027
Telephone: (713) 403-8200
Facsimile: (713) 403-8299
E-Mail: zfoley@thompsoncoe.com

-and-

Christopher Renzulli (admission pending)
Scott C. Allan (admission pending)
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
Email: crenzulli@renzullilaw.com
sallan@renzullilaw.com

Attorneys for Defendants EOTECH, LLC and Project Echo Holdings LLC d/b/a American Holoptics

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically served upon all counsel of record through the CM/ECF system on this 1st day of November 2024.

*/s/ Daniel P. Buechler*
Daniel P. Buechler